The STATE ex rel. MIDLAM, Appellant,

v.

GREENVILLE CITY SCHOOL DISTRICT BOARD OF EDUCATION, Appellee.

[Cite as *State ex rel. Midlam v. Greenville City School Dist. Bd. of Edn.,* 161 Ohio App.3d 696, 2005-Ohio-3061.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 1648.

Decided June 17, 2005.

Beverly J. Farlow and Vicki K. Johnston, for appellant.

Richard W. Ross and Nicole M. Donovsky, for appellee.

YOUNG, Judge.

{¶ 1} Plaintiff-appellant, Ginger Midlam, is appealing from the judgment of the Darke County Common Pleas Court dismissing her complaint against defendant-appellee, Greenville City School District Board of Education.

{¶ 2} Ginger Midlam was hired by the Greenville City School District Board of Education to serve as an elementary-school principal at South Elementary School for a two-year term beginning August 1, 2002, and ending July 31, 2004. Prior to her employment with the Greenville City School District as an administrator, Midlam served as a certified teacher for 15 years in Ohio and had received continuing-contract status as a teacher at Tri–County North School District in Ohio.

{¶ 3} Midlam began her employment with the Greenville City School District at the end of July 2002, when she attended an administrative forum. She went on to serve as elementary principal for the entirety of her two-year term ending July

31, 2004. During Midlam's first year as principal, Dr. Mark Weedy, Superintendent of Greenville City School District, evaluated Midlam in June 2003. In a one-to-six rating scale, Midlam received all ones ("one" meaning "outstanding") and twos ("two" meaning "good"). Dr. Weedy commented that "Ginger has done a good job as a first-year principal at South." Dr. Weedy also included suggestions for improvement, including visiting classrooms on a regular basis, communicating more with other principals, and continuing to work on the fiscal side of being a principal.

{¶ 4} During her second year as elementary principal, Midlam received another evaluation from Dr. Weedy, dated December 8, 2003. Midlam received all twos and threes ("three" meaning "satisfactory"). Dr. Weedy commented, "Ginger has struggled in her second year as principal." Dr. Weedy suggested areas for improvement, including delegating duties, building relationships, and avoiding playing "catch-up."

{¶ 5} Midlam received a final evaluation, dated February 26, 2004, from Dr. Weedy. Midlam received threes, fours ("four" meaning "fair"), and fives ("five" meaning "unsatisfactory"). Dr. Weedy commented as follows:

{¶ 6} "Ginger has struggled with leading her building effectively this year. She does not appear to have a solid, reliable indication of how other people view her in her role as principal. Ginger has a good instructional mind, but is not able to communicate effectively. Ginger has been mentored by Maureen McDonough, but Ginger has not initiated requested conversations as requested in the evaluation dated December 8, 2003. I will be recommending non-renewal to the Board of Education."

{¶ 7} Midlam received the evaluation on March 4 and met with Dr. Weedy to discuss the evaluation on March 11. Thereafter, Dr. Weedy sent Midlam a letter indicating that her contract would be expiring on July 31, 2004, and that she would have the opportunity to meet with the Greenville City School District Board of Education to discuss her administrative contract. Midlam requested a meeting with the board. On March 23, the board met with Midlam to discuss the nonrenewal of her administrative contract. On March 30, the board passed a resolution not to renew Midlam's contract as an administrator. Midlam was informed of the nonrenewal by written notice on March 30. In a letter dated March 30, Midlam requested continuing-contract status as a teacher subsequent to her nonrenewal as an administrator. On April 9, the board responded by letter, denying Midlam's request on the basis that the board did not re-employ her under an additional contract.

{¶ 8} After filing a complaint against the board, Midlam filed a motion for a preliminary injunction and a request for a writ of mandamus. After a hearing, the trial court denied Midlam's motion for a preliminary injunction and request

for a writ of mandamus and dismissed her complaint. The trial court concluded that Midlam was not entitled to reemployment as an administrator because Midlam was properly evaluated in accordance with R.C. 3319.02(D). The trial court found that "the evaluations were conducted in a timely manner; that notices were timely provided; that the meeting between the Board of Education and Mrs. Midlam was timely; and that the decision to non-renew her principal's contract was timely made by the Board of Education." The trial court also concluded that Midlam was not entitled to re-employment as a teacher under a continuing contract because "a continuing contract is not automatically renewed, and * * * R.C. 3319.11(B) sets forth various procedural safeguards which must be fulfilled before continuing employment is granted." The trial court found that the board properly had notified Midlam of its intention not to reemploy her Midlam and that the board complied with the evaluation provisions in R.C. 3319.111(A). Midlam appeals from this judgment of the trial court dismissing her complaint.

{¶ 9} Midlam raises the following two assignments of error:

{¶ 10} "The trial court erred as a matter of law in failing to order appellee to place appellant in the classroom as a result of her continuing contract status as a teacher."

{¶ 11} "The trial court erred as a matter of law by not renewing appellant's two-year administrative contract due to appellee's failure to properly evaluate appellant as required by the Ohio Revised Code."

{¶ 12} Midlam's first assignment of error contends that the trial court erred in concluding that Midlam was not entitled to reemployment as a teacher under a continuing contract. Midlam argues that pursuant to R.C. 3319.11(B), her continuing-contract status as a teacher was reestablished when she completed her two years of service as an administrator. Midlam argues that R.C. 3319.11(B) does not require the board to take some further action to re-employ her before the board must honor her continuing-contract status and that such a requirement is contrary to the Ohio Supreme Court's decision in *State ex rel. Kelley v. Clearcreek Local School Dist. Bd. of Edn.* (1990), 52 Ohio St.3d 93, 556 N.E.2d 173.

{¶ 13} R.C. 3319.11(B) provides that "[t]eachers eligible for continuing service status in any city, exempted village, local, or joint vocational school district or educational service center shall be those teachers qualified as described in division (B)(1) or (2) of section 3319.08 of the Revised Code, who within the last five years have taught for at least three years in the district or center, and those teachers who, having attained continuing contract status elsewhere, have served two years in the district or center, but the board, upon the recommendation of

the superintendent, may at the time of employment or at any time within such two-year period, declare any of the latter teachers eligible."

{¶ 14} In *Kelley*, the Ohio Supreme Court held that "a certified teacher who has attained continuing service status in one school district, and who has served at least two years as an administrator in a second school district, is entitled to a continuing service contract as a teacher in the second school district if the administrative contract is not renewed." *Kelley*, 52 Ohio St.3d at 97, 556 N.E.2d 173. Adopting the trial court's observations, the Ohio Supreme Court noted that " '[i]f the new school board determines, after the expiration of one year of employment, that the administrator/school board relationship will not work, it may terminate that relationship with the need to then find a new administrator. This set of facts would leave the ex-administrator without recourse (the Court is assuming that continuing service status as a teacher had been attained in the first school). On the other hand, if the school board makes the decision to attempt continuity by allowing this new administrator a second year, by statute, at the expiration of the second year continuing service status as a teacher is reestablished.' " Id. The court stated that under R.C. 3319.11, " 'the board is afforded a one-year "grace period" to determine whether or not it has made the right decision.' " Id., quoting the trial court.

{¶ 15} In this case, Midlam is a certified teacher who attained continuing-service status in one school district, Tri–County North School District. Midlam served a little over two years as an administrator in a second school district, Greenville City School District. Midlam's administrative contract was not renewed in Greenville City School District. We find that the Ohio Supreme Court was clear in *Kelley* when it held that "a certified teacher who has attained continuing service status in one school district, and who has served at least two years as an administrator in a second school district, is *entitled* to a continuing service contract as a teacher in the second school district if the administrative contract is not renewed." (Emphasis added.) *Kelley*, 52 Ohio St.3d at 97, 556 N.E.2d 173. In accordance with *Kelley*, we conclude that Midlam is entitled to a continuing-service contract as a teacher in the Greenville City School District.

{¶ 16} The board contends that *Kelley* is distinguishable from this case because Mr. Kelley was employed for four years before the board acted not to renew his contract. We find that the amount of time served past the two-year mark is irrelevant. *Kelley* is on point with this case because the plaintiff in *Kelley* served two years as an administrator, as did Midlam in this case.

{¶ 17} The board also argues that Midlam is not entitled to continuing-contract status as a teacher, because she had not served two years as an administrator when her administrative contract was not renewed in March 2004. Because

Midlam ultimately did serve two years as administrator, as required by R.C. 3319.11(B), this argument is not well taken.

■ {¶ 18} Finally, the board argues that Midlam is not entitled to continuing-contract status as a teacher because the board did not take any further action to extend her employment. We find this argument to be contrary to the holding in *Kelley*, on which we base our decision. Again, *Kelley* clearly holds that "a certified teacher who has attained continuing service status in one school district, and who has served at least two years as an administrator in a second school district, is *entitled* to a continuing service contract as a teacher in the second school district if the administrative contract is not renewed." (Emphasis added.) *Kelley*, 52 Ohio St.3d at 97, 556 N.E.2d 173. There is no requirement that the board take further action to extend employment before the continuing-contract status as a teacher is reestablished.

{¶ 19} Pursuant to R.C. 3319.11(B) and *Kelley*, supra, we conclude that the trial court erred in concluding that Midlam was not entitled to continuing-contract status as a teacher in the Greenville City School District. Accordingly, Midlam's first assignment of error is sustained.

■ {¶ 20} Midlam's second assignment of error contends that the trial court erred in concluding that she was not entitled to reemployment as an administrator because she was properly evaluated in accordance with R.C. 3319.02(D). Midlam argues that a proper evaluation was not conducted in accordance with R.C. 3319.02(D), because she was never advised of deficiencies that needed to be improved or that failure to improve deficiencies would result in nonrenewal of her contract. Midlam also argues that she was not properly evaluated because she was not allowed the opportunity to improve her performance. Midlam argues that by these actions, the board violated R.C. 3319.02(D), the remedy of which is an automatic contract renewal of one year.

{¶ 21} R.C. 3319.02(D)(2) provides as follows:

{¶ 22} "(c) In order to provide time to show progress in correcting the deficiencies identified in the evaluation process, the evaluation process shall be completed as follows:

{¶ 23} "(i) In any school year that the employee's contract of employment is not due to expire, at least one evaluation shall be completed in that year. A written copy of the evaluation shall be provided to the employee no later than the end of the employee's contract year as defined by the employee's annual salary notice.

{¶ 24} "(ii) In any school year that the employee's contract of employment is due to expire, at least a preliminary evaluation and at least a final evaluation shall

be completed in that year. A written copy of the preliminary evaluation shall be provided to the employee at least sixty days prior to any action by the board on the employee's contract of employment. The final evaluation shall indicate the superintendent's intended recommendation to the board regarding a contract of employment for the employee. A written copy of the evaluation shall be provided to the employee at least five days prior to the board's acting to renew or not renew the contract."

{¶ 25} R.C. 3319.02(D)(5) provides:

{¶ 26} "The establishment of an evaluation procedure shall not create an expectancy of continued employment. Nothing in division (D) of this section shall prevent a board from making the final determination regarding the renewal or nonrenewal of the contract of any assistant superintendent, principal, assistant principal, or other administrator. However, if a board fails to provide evaluations pursuant to division (D)(2)(c)(i) or (ii) of this section, or if the board fails to provide at the request of the employee a meeting as prescribed in division (D)(4) of this section, the employee automatically shall be reemployed at the same salary plus any increments that may be authorized by the board for a period of one year, except that if the employee has been employed by the district or service center as an assistant superintendent, principal, assistant principal, or other administrator for three years or more, the period of reemployment shall be for two years."

{¶ 27} We initially find that there is no statutory requirement that Midlam's evaluation contain a warning that failure to improve deficiencies will result in nonrenewal of her contract. We further find that Midlam was advised of deficiencies in her performance that needed to be improved.

{¶ 28} In Midlam's first evaluation in June 2003, Dr. Weedy included suggestions for improvement, including visiting classrooms on a regular basis, communicating more with other principals, and continuing to work on the fiscal side of being a principal. In Midlam's second evaluation, dated December 8, 2003, Dr. Weedy commented, "Ginger has struggled in her second year as principal." Dr. Weedy suggested areas for improvement, including delegating duties, building relationships, and avoiding playing "catch-up." Specifically, Dr. Weedy stated as follows:

{¶ 29} "Management issues are an area for immediate improvement, including organization, communication, and relationship building. Ginger needs to be more organized. That might mean asking your secretary or other staff members to help pick up in areas where you are not so strong. Communication with staff and parents must improve as well as communication with me. Finally, building solid relationships with staff members is necessary to facilitate improved student

performance. I suggest you meet periodically with Maureen McDonough to talk about issues in your building and how best to deal with them. In the end, however, you must deal with these issues."

{¶ 30} In Midlam's third evaluation, dated February 26, 2004, over two months after her second evaluation, Dr. Weedy commented as follows:

{¶ 31} "Ginger has struggled with leading her building effectively this year. She does not appear to have a solid, reliable indication of how other people view her in her role as principal. Ginger has a good instructional mind, but is not able to communicate effectively. Ginger has been mentored by Maureen McDonough, but Ginger has not initiated requested conversations as requested in the evaluation dated December 8, 2003. I will be recommending non-renewal to the Board of Education."

{¶ 32} The first and second evaluations contain deficiencies in Midlam's performance and Dr. Weedy's suggestions for improvement. The first evaluation was nearly eight months prior to Dr. Weedy's recommendation for nonrenewal, and her second evaluation was over two months prior to Dr. Weedy's recommendation for nonrenewal. We find this to be sufficient time for Midlam to show progress in correcting deficiencies identified in the evaluation process in accordance with R.C. 3319.02(D)(2)(c). The second and third evaluations show that Midlam failed to correct some deficiencies identified in her prior evaluations.

{¶ 33} In addition, the record shows that the board conducted timely evaluations in accordance with R.C. 3319.02(D)(2)(c)(i)(ii). In compliance with R.C. 3319.02(D)(2)(c)(i), Dr. Weedy conducted an evaluation of Midlam in June 2003 and provided Midlam with a written copy of the evaluation within Midlam's first year as an administrator. In compliance with R.C. 3319.02(D)(2)(c)(ii), Dr. Weedy performed a preliminary evaluation of Midlam and provided Midlam with a written copy of the evaluation on December 8, 2003, within 60 days of the board's action not to renew Midlam's administrative contract on March 30, 2004. Dr. Weedy conducted a final evaluation, dated February 26, 2004, in which he included his recommendation not to renew Midlam's administrative contract, and provided her with a written copy of it, which she received on March 4, 2004, more than five days before the board's action not to renew Midlam's administrative contract on March 30, 2004. In addition, Midlam requested a meeting with the board, which was granted, in compliance with R.C. 3319.02(D)(4). The board met with Midlam on March 23 to discuss the nonrenewal of her administrative contract. The board passed a resolution not to renew Midlam's contract as an administrator on March 30, prior to the last day of March. See R.C. 3319.02(D)(4). Midlam was informed of the nonrenewal of her administrative contract by written notice on March 30.

{¶ 34} We conclude that the trial court did not err in concluding that Midlam was not entitled to automatic reemployment as an administrator, because she was properly evaluated in accordance with R.C. 3319.02(D). Accordingly, Midlam's second assignment of error is overruled.

{¶ 35} Midlam's first assignment of error having been sustained and her second assignment of error having been overruled, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

WOLFF and GRADY, JJ., concur.

FREDERICK N. YOUNG, J., retired, sitting by assignment.